14805

CRAIG v. PICKENS COUNTY

(200 S. E., 825)

*Messrs. Mann & Mann,* for appellant.

*Messrs. W. A. Bull, B. A. Chapman* and *G. G. Christopher,* for respondent,

January 10, 1939.

*Per curiam.*

In this controversy between Pickens County as appellant and the Sheriff of that county as respondent, the latter is claiming certain salary items which represent attempted statutory reductions of his salary below the prevailing salary at the time of his election to the office, and also certain fees connected with the handling of delinquent tax executions.

The claim to the salary items is founded upon the contention that the attempted reduction of the respondent's salary by local statutory enactments following his election is beyond the power of the Legislature.

The tax execution fees claimed by the respondent admittedly were not earned by him in the sense that he did not receive such executions from the treasurer, or levy the same; he however contends that he is nevertheless entitled to these fees because they are fixed in the general law of the state as a part of the emoluments of his office and that the statutory provisions under which the treasurer of the county delivered these executions to the tax collector of the County, rather than to the sheriff, are invalid, and cannot deprive him of his rights under the general law.

With reference to the controversy respecting the salary of the Sheriff the essential facts are as follows: The Sheriff was elected for successive terms beginning January, 1925. He continued to serve until July 4, 1934. In 1932 and prior years, the sheriff's salary was $2,000.00 a year. In 1933 the salary was reduced to $1,700.00 and an expense account of $40.00 a month was provided. During the period of his services in 1934 his salary was at the rate of $1,800 a year plus $50.00 a month for expenses.

In February, 1931, the Legislature passed an Act providing for the establishment of the office of delinquent tax collector in Pickens County (Act Feb. 19, 1931, No. 60, 37 St. at Large, page 83). To this official the Act delegates the duties respecting the receipt from the treasurer of the county and the enforcement of delinquent tax executions. All of the powers vested by the general law in the Sheriff of the county are by this local act conferred upon the tax collector in so far as the enforcement of the collection of delinquent taxes is concerned; and by the same Act the Sheriff is by specific language "relieved from the collection of any delinquent taxes after the effective date of this Act." The Act does not transfer to the delinquent tax collector the fees and costs required under the general law to be paid to the Sheriff in connection with delinquent tax executions, but requires that the same shall be paid over to the county. The tax collector receives a specified salary in lieu of all such fees and costs.

The holding of the Circuit Court that because the office of sheriff is a constitutional office, the Legislature is without power to decrease his salary during his term of office is in conflict with the rule on this subject recently declared by this Court in the case of *Gamble v. Clarendon County,* 188 S. C., 250, 198 S. E., 857. As pointed out in that case, there is no statewide statute in South Carolina governing the salary of a sheriff, so as to prevent the enactment of local salary Acts, and there is no constitutional provision applicable to the ·office of sheriff preventing his salary from being increased or diminished during his term. As to certain state executive officers (Const. Art. 4, Sec. 24) and the justices of the Supreme Court, and judges of the Circuit Courts (Const. Art. 5, Sec. 9), compensation may not be increased or diminished during the term of office. But there is no such constitutional inhibition respecting the office of sheriff.

The decision in the *Gamble case* expresses a settled judicial doctrine that conforms to the long standing practice of the Legislature in fixing the salary of the sheriff by local

Acts, usually in the annual appropriation Acts, from year to year.

Accordingly, on the salary question, it is the opinion of the Court that the respondent cannot maintain his claim herein for the reductions in salary made by the various local Acts for Pickens County during the several years that he remained in office.

The fact that the reductions were made by the indirect method of reduced salary appropriations in the annual county supply Bills, rather than by separate and distinct legislative enactments can have no bearing on the situation. *Plowden v. Beattie,* 185 S. C., 229, 193 S. E., 651.

The question of the right of the respondent to payment of the tax execution fees and costs claimed by him is affected by the enactment of the aforementioned Act of 1931 creating a special office for the collection of delinquent taxes, and providing for a salaried official, separate and apart from the sheriff's office, to carry out the duties imposed by that Act, and therefore constituting a part of the duties incident to the office of the sheriff.

Because of the existence of the office of delinquent tax collector, the respondent had no part in the handling of delinquent taxes in Pickens County after February, 1931. Consequently, his present claim to execution fees and costs is a claim for statutory compensation for services that he did not in fact render.

The question is whether or not the Legislature, having provided by general law for the handling and enforcement of executions for delinquent taxes by the sheriff of the county, and having provided a fixed scale of compensation to be paid to that official for such services, may provide by a series of separate local statutes for the performance of such services in various counties by an officer other than the sheriff, through the creation of an entirely new office for that purpose, and for the transfer to the County Treasury of

the fees and costs which under the general law are payable to the sheriff.

Two provisions of the Constitution are involved, to wit: Article 3, Sec. 34, which prohibits the enactment of a special law in cases "where a general law can be made applicable," and Article 7, Sec. 11, which, as construed by this Court, confers upon the Legislature broad powers in the formulation and control of county government.

The question before us has not previously been adjudicated. The problem however was recognized in the case of *Salley v. McCoy et al.,* 186 S. C., 1, 195 S. E., 132, as one that needs to be kept in mind in dealing with legislation claimed to come within the purview of the constitutional provisions above adverted to. In that case, at page 11 of 186 S. C., 195 S. E. at page 136, we recognized the issue in these words: "* * * Therefore, we are not to be understood as dealing with such questions as the power of the Legislature, by special local laws, to take away from the sheriff of a county the duties connected with the collection of delinquent taxes and to confer such duties upon a tax collector, and to transfer from the office of the sheriff to that of the tax collector, or to the general county fund, the emoluments attached to the collection of delinquent taxes. This question, presented by the arguments of counsel relating to the sixth defense by way of counterclaim, is not before the Court in the light of the principles hereinbefore and hereinafter discussed. The broad powers conferred upon the Legislature in respect to county government by Article 7, Section 11, of the Constitution should not be taken to be affected by the rulings we made on the first appeal, and that are herein made, on the subject of the validity and applicability of the statutes relating to the compensation of a county treasurer."

There is a fundamental distinction between the facts in the *Salley case* and those presented in this case, which rendered it unnecessary to meet the issue in that case, but that requires it to be settled here. The legislation involved in the

*Salley case* undertook to create the office of Tax Collector for Orangeburg County, but did not wholly divest the sheriff of his functions respecting the enforcement of the general laws of the State for the collection of delinquent taxes, as in the present case. The Act involved in the *Sally case* (No. 401, Acts 1933) deprived the sheriff of his execution and other fees incident to the collection of delinquent taxes, but made it the duty of the sheriff, upon the order of the tax collector, to take possession of property sold for taxes and deliver the possession thereof to the purchaser. Thus the offices of the sheriff and the tax collector each had a part in dealing with the enforcement of tax executions. And we concluded that under all of the facts of the case, in the light of the constitutional provisions above adverted to, the attempt of the Orangeburg statute to deprive the sheriff of the execution and other fees incident to the collection of delinquent taxes constituted a violation of the constitutional prohibition against special legislation, within the long line of cases dealing with that subject culminating in the recent decision of this Court in the case of *Ridgill v. Clarendon County, S. C.,* 199 S. E., 683.

Here, however, we are dealing with a local statute which entirely divorces the collection of delinquent taxes, and all of the duties pertaining to the handling of property sold for the nonpayment of such taxes from the office of the sheriff, and places such duties in the hands of the tax collector. The language of the Act is sweeping: "All the powers now vested in the Sheriff of Pickens County as to the collection of delinquent taxes, seizure and sale of property, etc.," are conferred upon the tax collector. The State Legislature is not without power thus to provide tax collecting machinery for a particular county to meet the peculiar conditions prevailing in such county.

The general laws of the State fixing the *procedure* for the collection of delinquent taxes, and the scale of compensation for the various services to be ren-

dered in the exercise of that function, are in no wise impaired by this local statute. The constitutional requirements of uniformity of method and of penalties upon the taxpayer are fully met. There is no attempted division of the functions between the two offices as in the *Salley case.* The Act is merely an expression of a legislative determination that in Pickens County the situation is such that it is desirable to provide for the handling of delinquent taxes, and the enforcement of payment of such taxes, through a special office provided for that purpose.

Legislation providing for the office of tax collector in a large proportion of the counties of the State is indicative of a legislative realization that conditions in the various counties in the State preclude uniformity of treatment of the counties in respect to the matters in question, and this legislative trend is further illustrated by a provision in Section 2855 of the Code that "in those counties where the duties herein referred to are performed by other officers the provisions hereof shall apply to them." This Code section has reference to the seizure and sale of property for delinquent taxes, and while a similar provision is not contained in the other Code sections respecting delinquent taxes, it is apparent that this omission is an inadvertence. All of the legislation on this subject is indicative of a legislative viewpoint that although the *procedure* for the enforcement of delinquent taxes and the penalties imposed on the taxpayer must be kept uniform throughout the State, the personnel of the offices which execute the law is a matter that should be met in accord with the conditions found in each particular county.

In other words, it may be said to be a matter of local government, within the provisions of Article 7, Sec. 11 of the Constitution, to deal with the personnel involved in the enforcement of delinquent taxes, and not a matter of State legislation in the sense contemplated by the requirement of uniformity contained in Article 3, Section 34.

The application of this view to the respondent here involves no conflict with the holding in the *Salley case, supra* (see also prior appeal, 182 S. C., 249, 189 S. E., 196). There the legislation before the Court was of such a character, as above indicated, as to involve only the question of its validity under the provisions of Article 3, Section 34, of the Constitution.

We were not in that case primarily interested in the right of the sheriff to the fees paid him, since the execution fees collected as and for sheriff's fees were not the property of the county; but the right of the sheriff to the execution fees paid him was upheld on the sole ground that since the county had no right to the execution fees, and since the sheriff's office was concerned with the collection of delinquent taxes, the general statutory provision for the payment of such fees to the sheriff could not be varied by local legislation which undertook to divert such fees to the treasury of Orangeburg County. Here it is of course likewise true that the county is not entitled to the execution fees; but the claim to the fees with which we are now dealing is made by the sheriff, and since he is not entitled to the same, it can avail him nothing to argue that the county is not entitled to the same. Certainly the county cannot be made to disgorge in favor of one not entitled to receive the money.

The anomoly of this situation is one with which of course we cannot deal except to meet the issues presented in the present case. The retention of the fees by the county, in violation of the explicit requirement of the general law that the same shall be paid to the sheriff, is after all a matter of little consequence from either a legal or moral standpoint for obviously in the administration of the tax laws through the office of the delinquent tax collector, as here, where salaries are provided in lieu of the statutory fees, the fees irregularly paid into the treasury of the county are largely expended for the very purpose for which the general law provides them.

The judgment of the Circuit Court is reversed and the case remanded for the entry of judgment in favor of the appellant.

Mr. Chief Justice Stabler and Messrs. Justices Bonham, Baker and Fishburne concur.

Mr. Justice Carter did not participate on account of illness.

### Order on Petition for Rehearing

*Per Curiam.*

The respondent has petitioned for a rehearing or (if a rehearing is refused) "that this Court make it clear that it did not intend to pass upon the right of respondent to fees on executions that were received by him prior to the Act of 1931 * * *." The petition fails to conform to Rule 17 of this Court in important particulars and on that ground might properly be disregarded in its entirety. In form and content it is a vigorous *argument* challenging the correctness of the conclusions of the Court and in that regard violates both the spirit and letter of the Rule. But the importance of the issues decided in this case is such that the Court desires to leave open no room for doubt that in addition to the painstaking consideration that was given the questions involved in the case before the original opinion was written, the whole subject has been carefully reviewed. For this reason alone the infirmities in the petition are overlooked.

The suggestion that the respondent may be entitled to compensation by way of fees on executions which were in his hands prior to the effective date of the Act of 1931, and which he turned over to the delinquent tax collector as directed by that Act, involves an issue that was not raised below, and is not determinable from the record. The decision of this Court that the respondent is not entitled to such execution fees needs no revision or reconsideration unless in individual instances it happens to be a fact that the sheriff not merely had possession of the executions, but that he had actually performed services in the

direction of *enforcing* such executions. The Court was not called upon in this case to decide, and has not decided whether the respondent could be deprived of his fees in a situation where he had actually levied an execution, taken possession of the property, and advertised the same for sale, without having actually collected the taxes because of the intervention of the 1931 statute. If any instances of that character are presented in the present case, the record does not disclose them. There is certainly no testimony in the present record from which it can be deduced that any services were performed by the respondent respecting any of the executions that were already in his hands prior to the 1931 Act becoming operative. The Court is of opinion that the mere receipt by the sheriff of an execution before the 1931 Act became effective, and his delivery of such execution to the tax collector pursuant to the terms of the Act, does not involve any such constitutional issue as the deprivation of compensation for services rendered, as respondent now suggests.

In the third paragraph of the opinion it is stated that the fees in question in this case "were not earned by him in the sense *that he did not receive such executions from the treasurer,* or levy the same;" to the extent, if any, that executions were already in the hands of the respondent in 1931, before the Act became effective, this statement would be inaccurate, but obviously such inaccuracy could have had no bearing whatsoever upon the matters decided. The opinion clearly states the issue with which the Court was dealing when it said that "the respondent had no part in the *handling of delinquent taxes* in Pickens County after February, 1931." That statement is fully supported by the record.

We see no reason to change our views respecting the power of the Legislature to deal with the subject-matter of delinquent tax collections in the manner in which it has undertaken so to do by the Act in question in the present cause. There is no conflict in the holding made in this case

with any previous holdings of this Court. We have not heretofore been called upon to deal with the issue of the power of the Legislature to completely divorce the collection of delinquent taxes, in all of its phases, from the handling of the tax execution down to the actual receipt of the tax money, from the sheriff's office, in a particular county; we can find no constitutional impediment to the exertion of this legislative power. To deny this power to the Legislature, where no discrimination against or injury to the taxpayer of the particular county is involved, is to tie the hands of the Legislature in dealing with one of the largest issues in local government now confronting the State. No constitutional provision calling for such a restriction on the legislative power has been called to our attention. We are not disposed to hold that such a restriction arises from the provision of Article 3, Section 34 of the Constitution, prohibiting the enactment of special legislation in certain classes of cases.

The argument of respondent in opposition to the views above expressed is based largely upon the contention that because the office of sheriff is a constitutional office, the subject-matter of the duties of the office and of the compensation for the performance of such duties involves some constitutional limitations or restrictions. We have held in this case and in other cases that the salary of the office of sheriff is subject to the control of the Legislature from year to year. We can find no judicial basis for denying to the Legislature a similar power respecting the divorcement from the office of sheriff of certain duties that can be better performed by other officials. To concede that the Legislature has this power, and then to deny to the Legislature the power to take away from the sheriff the compensation which attaches to the duties to be performed by other officials does not appeal to us as reasonable. Viewing the matter in the broad governmental light in which the issues arise, we are not disposed to hamstring the Legislature in dealing with the handling of delinquent tax collections according to

the needs of each particular county. To do so would not be within either the spirit or the letter of any applicable provision of the Constitution.

After giving the matter the careful consideration which its importance deserves, we are satisfied that none of the grounds presented in the petition for rehearing have merit. The petition is accordingly refused.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.