16487

SMITH *ET AL. v.* LEXINGTON SCHOOL DIST. NO. 1 *ET AL.*

(64 S. E. (2d) 534)

192

*Messrs. Charles B. Elliott,* of Columbia, *McKendree Barr* of Leesville, and *Blease Ellison,* of Lexington, *for Appellants,*

·Messrs.· C. S. Monteith, Jr., of ·Columbia, R. Milo Smith and A. Frank Lever, Jr., of Lexington, and Jeff D. Griffith, of Saluda, for Respondents,

April 4, 1951.

OXNER, Justice.

This action was brought by certain property owners and taxpayers of Lexington County against the school districts of said county, the respective trustees thereof, the members of the County Board of Education, and the Treasurer and Auditor of said county, for the purpose of having declared invalid Act No. 194 of the 1949 Acts of the General Assembly, 46 St. at L., p. 300, and various related acts passed in 1950, as being in conflict with certain provisions of the State and Federal Constitutions, and of enjoining defendants from further proceeding under or enforcing the terms of said acts. The appeal is from an order of the Court below sustaining a demurrer to the complaint and dissolving a temporary restraining order theretofore issued.

Act No. 194 above mentioned, which was approved on May 28, 1949, provided for the holding of a special election in Lexington County on or before September 1, 1949, at which there should be submitted to the qualified electors "the question of authorizing and empowering the County Board of Education of Lexington County to divide the County into new school districts by enlarging the school districts in which there are now State accredited high schools". In the event of a favorable vote at said election, the County Board of Education was directed to forthwith proceed to establish nine school districts in said county "by enlarging the nine present high school districts of the County with the present high school plants of each district as the nucleus of each enlarged school district." The County Board was further authorized to make a survey and establish the lines and boundaries of each new school district, a map or plat of which should be recorded in the office of the Clerk of Court. The Act further provided that each of the new school districts should be under the control and management of a board of trustees composed of seven members appointed and commissioned by the County Board of Education, with the right, however, on the part of the patrons of any school district to elect the trustees thereof upon the filing of a petition by a majority of such patrons requesting an election. The Act further provides: "That nothing herein contained shall be construed so as to impair the obligation of existing contracts or bonded indebtedness against any of the present school districts of Lexington County, all rights of the holders of any such bonds being hereby specifically preserved; Provided, That where present school districts of Lexington County have outstanding bonded indebtedness that in setting up new school districts that the new school districts shall include the present territories in said bonded school districts, in addition to such other territory as shall be added thereto from former school districts not subject to any bonded indebtedness, and the territory added thereto shall bear its just proportion of any tax levied to liquidate

such bonds; Provided, That the County Board of Education of Lexington County shall have the right to straighten the lines of said newly created school districts even though by so doing a portion of the area of a present bonded school district may be affected, where the new territory taken therein fully compensates for the territory taken therefrom. Provided, Further, That the title to all property owned by the school districts of said county shall be transferred to the new [school] district in which said property is situated."

A special election was duly held in August, 1949, which resulted in a majority vote in favor of the adoption of said act. It appears from the allegations of the complaint, which must be accepted as true in passing on the demurrer, that prior to the passage of Act No. 194, Lexington County contained 58 common school districts, some of which had bonded indebtedness and others none; that during the latter part of 1949, the County Board of Education, pursuant to the terms of said Act, undertook to divide the county into nine school districts; and that several of the new districts were formed by merely consolidating existing school districts but in most instances they were created by cutting across the boundaries of old school districts. It further appears from the complaint that appellants, or at least some of them, owned property in some of the old districts which had no bonded indebtedness and that these districts or portions thereof have now been added to districts having heavy bonded indebtedness, resulting in appellants being required to pay taxes to discharge bonded indebtedness of districts in which they did not reside or own property at the time said indebtedness was created.

Appellants challenge the validity of the election held pursuant to the terms of Act No. 194 and also the constitutionality of said act. We shall first consider the attack made upon said election.

It is alleged in the complaint that the election was null and void upon the grounds (1) that the registration books were

not closed thirty days prior to the election and during that period a number of registration certificates were issued, and (2) that a number of persons were permitted to vote without being required to produce registration certificates and show proof of payment of poll taxes thirty days prior to said election. It is claimed that the number of illegal votes were sufficient to have changed the result.

By Act No. 1282 of the 1950 Acts of the General Assembly, 46 St. at Large, p. 3272, approved February 17, 1950, the election held pursuant to the terms of Act No. 194 was validated and "declared to have been held legally in all respects". Assuming that the validity of said election can be challenged in this proceeding, any irregularities connected therewith were cured by the validating act. *Hodge v. Trustees of School District,* 80 S. C. 518, 61 S. E. 1009; *Dove v. Kirkland,* 92 S. C. 313, 75 S. E. 503; *Ashmore v. Greater Greenville Sewer District,* 211 S. C. 77, 44 S. E. (2d) 88, 173 A. L. R. 397. It must be kept in mind that there is no constitutional requirement of a referendum upon legislation of this kind. "It is a well-settled general rule that the Legislature, by a curative or validating statute which is necessarily retrospective in character and retroactive in effect, can 'validate any act which it might orginally have authorized.'" *Jennings v. Charleston & W. C. Railway Co.,* 218 S. C. 144, 62 S. E. (2d) 114, 117.

Of course, a validating act must be confined to acts which the legislature could previously have authorized. The vital question, therefore, is the constitutionality of Act No. 194. Appellants invoke a number of constitutional provisions which they assert the act violates. These will now be considered.

The major contention is that this act constitutes special legislation of the sort prohibited by Article 3, Section 34 of the Constitution in that it (1) undertakes to incorporate school districts in violation of Subdivision IV, and (2) is

a special law where a general law could be made applicable in violation of Subdivision IX.

The Court below held that the Act did not "incorporate school districts" but consolidated existing school districts, citing in support of this conclusion *Walker v. Bennett,* 125 S. C. 389, 118 S. E. 779; *Arnette v. Ford,* 129 S. C. 526, 125 S. E. 138; *Powell v. Hargrove,* 136 S. C. 345, 134 S. E. 380, and *Tindall v. Byars,* 217 S. C. 1, 59 S. E. (2d) 337, 339. But we do not think these cases warrant that conclusion. In *Walker v. Bennett* the act under attack consolidated five common school districts into one. The Court held that the effect was not to incorporate a school district in violation of Subdivision IV of Section 34, Article 3, but to consolidate existing districts. Both *Arnette v. Ford* and *Powell v. Hargrove* involved the establishment of a centralized high school for a number of common school districts with no attempt to destroy the entities of such districts or interfere with their normal functions. The Court held that the constitutional provision prohibiting the incorporation of a school district by special law applied only to common school districts and was not intended to restrict legislative action in the formation of high school districts. It was further held that this constitutional provision did not prohibit the consolidation of several existing school districts by special act. *Tindall v. Byars* involved an act under which the whole area of Chester County was constituted one school district by the consolidation of all the former districts. The Court said: "The law here consolidates rather than incorporates, and thereby does not offend subdivision IV."

The act involved in the instant case presents an entirely different situation. While a few of the new school districts were created by merely combining several old school districts, most of them, according to the allegations of the complaint, were formed by completely obliterating the boundary lines of the old districts and cutting off only portions thereof. Where the latter procedure was

followed, we think it is clear that the effect was to "incorporate school districts." *Kearse v. Lancaster,* as County Superintendent of Education, 172 S. C. 59, 172 S. E. 767.

We think, however, that the act may be sustained under the power given the General Assembly by the amendment to Section 5, Article XI of the Constitution, by which Lexington County was removed from the restrictions upon the area of school districts prescribed by said section. This amendment is as follows: "Provided, further, that the limitations as to the area of school districts imposed by this section shall not apply to Lexington County but in said County school districts shall be of such area as the General Assembly may prescribe." In considering a similar amendment relating to Chester County, it was stated in *Tindall v. Byars*: "* * *, the amendment removes Chester County from the bans of subdivisions IV and IX of sec. 34 of art. III, with respect to the incorporation of a school district by special law and forbidding special laws in other cases where a general law can be made applicable, simply because of the express constitutional authorization, perforce the amendment, for the creation of school districts in that county, guoting, 'as the General Assembly * * * may prescribe.' The prescribing may reasonably, if not necessarily, be made by special act and not general law."

Appellants vigorously assert that the foregoing statement was unnecessary to the decision and constitutes *mere dictum.* But we think it constituted one of the grounds upon which the Court rested its conclusion that the Chester County act did not contravene Subdivisions IV and IX of Section 34, Article 3. It must be conceded that there is certain language in *Kyzer v. Dent,* 163 S. C. 403, 161 S. E. 690, which cannot be reconciled with the foregoing quoted statement in the *Tindall case,* but the conclusion in the *Tindal case* was reached after full consideration of *Kyzer v. Dent* and represents the considered judgment of this Court as to the effect of a constitutional amendment of the nature here involved.

It may be of interest to note that the General Assembly during its 1950 session passed a joint resolution submitting to the electorate a proposed state-wide amendment to Article XI, Section 5 of the Constitution, removing the restriction in this section as to the area of school districts. Act No. 1064 of the 1950 Acts, 46 St. at L., p. 2671. The proposed amendment was approved at the general election held in the fall of 1950 and was ratified by the General Assembly during the current session.

We hold under authority of *Tindall v. Byars* that the act under consideration does not contravene Subdivisions IV and IX of Article 3, Section 34 of the Constitution. In concluding our discussion of this phase of the case, it will be noted that this legislation constitutes an obvious effort to meet the present school needs of Lexington County brought about no doubt by changing conditions. There seems to be a decided trend toward a reduction in the number of school districts in the various counties. It is not surprising that the plans adopted have not always been the same for we had occasion in *Moseley v. Welch*, 209 S. C. 19, 39 S. E. (2d) 133, to call attention to the fact that the general school law of this State contains divers special provisions relating to a number of counties, which indicates a legislative conclusion that the conditions in the various counties are such as to preclude uniformity of treatment in relation to the administration of school affairs.

We shall now consider the contention that Act No. 194 is unconstitutional in that it seeks to delegate legislative power to the County Board of Education. The exceptions relating to this question are overruled under the authority of *Waterloo School District v. Cross Hill School District,* 106 S. C. 292, 91 S. E. 257. Also, see *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316; 47 Am. Jur., Schools, Sec. 18.

It is also argued that Act No. 194 violates that portion of Article 11, Section 5, which states that the General Assembly shall provide "for the division

of the Counties into suitable school districts, as compact in form as practicable, having regard to natural boundaries". We fail to see wherein there is any violation of this section. In *Moseley v. Welch, supra,* 209 S. C. 19, 39 S. E. (2d) 133, 140, in discussing this section of the Constitution, we said: "It will be observed that the Constitution, as now amended, places very few restrictions on the power of the General Assembly in the general field of public education. It is required to provide 'for a liberal system of free public schools,' but the details are left to its discretion. While the Constitution directs that the counties shall be divided into suitable school districts, nothing is 'said therein as to the number or character of schools to be established or maintained in these districts, these things being left to the legislative power.' "

The remaining exceptions assail the validity not only of Act No. 194, but also certain related acts passed in 1950 which will now be briefly reviewed.

By Act No. 768 of the 1950 Acts, March 4, 46 St. at Large, p. 1934, the General Assembly, after amending Act No. 194, in several particulars not pertinent to this appeal, provided: "The county auditor of Lexington County is authorized and empowered to levy a uniform tax on all assessed real and personal property within each school district in Lexingon County for the purpose of retiring any bonded indebtedness that may exist in said district. The board of trustees of each of the nine school districts in Lexington County shall on or before the first day in the month of June of each year notify the county auditor of Lexington County, in writing, the millage required for operating the schools of their respective districts and the county auditor shall levy such millage against all of the real and personal property in said school district to be known as a special school tax to be used for operating schools in said districts."

Act No. 1284 of the 1950 Acts, May 6, 46 St. at Large, p. 3276, is as follows:

"The Treasurer of Lexington County is hereby authorized and directed to transfer any funds now deposited to the credit of those school districts in Lexington County which were consolidated under an act bearing ratification No. 772, approved February 17, 1950, to the credit of .the respective consolidated district to which said district now belongs."

By Act No. 1286 of the 1950. Acts; March 2, 46 St. at Large, p. 3277, one of the new districts was required to assume certain indebtedness apparently incurred by one of the constituent districts and the auditor was directed to levy a sufficient tax upon all the property of the new district to pay the principal and interest of said indebtedness. It appears that this indebtedness was incurred for the purpose of completing a building program.

It is contended that the foregoing acts deny appellants due process of law and the equal protection of the laws guaranteed by the Fourteenth. Amendment to the Federal Constitution and Article 1, Section 5, of our State Constitution, in that appellants, who formerly owned property in some of the old districts having no bonded indebtedness, will now be required to contribute toward the payment of the bonded indebtedness of other school districts. But we think that this contention overlooks the fact that the new district acquires title to all school property located therein and succeeds to all the assets of the constituent districts. In *Walker v. Bennett, supra,* 125 S. C. 389, 118 S. E. 779, 781, the Court quoted with approval the following: "In case of the abolition of the old district and the formation of new districts out of its territory, the new districts are deemed the successors of the old, and as such liable for all its debts and entitled to all of its property."

There is no showing in the instant case that the County Board of Education acted arbitrarily or that the plan adopted in the formation of the new districts is grossly unjust to those who owned property in the old districts which had no bonded indebtedness. In *Moseley v. Welch, supra,* 209 S.

C. 19, 39 S. E. (2d) 133, relied on by appellants, the act in controversy provided that all outstanding bonded indebtedness of the several school districts of Williamsburg County should be assumed by the County Board of Education and that there should be levied annually a county-wide tax to pay the principal and interest on the obligations thus assumed, but the corporate entity of each school district was left undisturbed; there was no consolidation; and the respective school districts continued to own the property located therein. That case presented an entirely different situation. The plan adopted in the instant case is more like that followed in *Burriss v. Brock*, 95 S. C. 104, 79 S. E. 193, and *Tindall v. Byars, surpra*, 217 S. C. 1, 59 S. E. (2d) 337. We think the last two mentioned cases fully sustain our conclusion. Also, see *Laramie County v. Albany County*, 92 U. S. 307, 23 L. Ed. 552, and *Atty. Gen. of State of Mich. ex rel. Kies v. Lowrey*, 199 U. S. 233, 50 L. Ed. 167, 26 S. Ct. 27.

Finally, it is contended that these acts violate Article 10, Section 3 of the Constitution which provides: "No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same; to which object the tax shall be applied." It is also asserted that there is a violation of that portion of Article 11, Section 6 of the Constitution which provides that the proceeds of the poll tax "shall be expended for school purposes in the several school districts in which it is collected." We are unable to find any merit in either of these contentions. It must be kept in mind that the functions of the old school district have been completely destroyed and the assets thereof transferred to the newly created districts.

The order appealed from is affirmed.

FISHBURNE, STUKES and TAYLOR, JJ., and L. D. LIDE, Acting Associate Justice, concur.