## SHARPE et al. v. ALSTON CONSOLIDATED SCHOOL DISTRICT et al.

No. 8008.  September 17, 1931.

*J. Wade Johnson* and *M. B. Calhoun,* for plaintiffs in error.
*M. H. Boyer,* solicitor-general, and *Lankford, Rogers & Newton,* contra.

BECK, P. J. Alston Consolidated School District was created by "concurrent consent and action" of the boards of education of the counties of Montgomery and Toombs, out of territory of each of the said counties. The schoolhouse or schoolhouses of the district are located in the County of Montgomery. An election was held in said district for the purpose of issuing bonds in the sum of $10,000, to build and equip a schoolhouse or schoolhouses for the district. The vote was favorable to the issuance of bonds, and the notice required by law was served upon M. H. Boyer, solicitor-general of the Oconee Circuit. He filed an application in the superior court of Montgomery County for the purpose of having the bond issue validated. The trustees of the school district were served with a copy of the application, and at the time assigned for the hearing they appeared and filed an answer admitting the material allegations of the petition. At the same time the plaintiffs in error appeared and filed an answer by intervention, denying the material allegations of the petition, as well as general and special demurrers. The demurrers attacked the constitutionality of the law purporting to give the county boards of education of two or more counties the power to create school districts without regard to county lines; and denied the legal authority of the solicitor-general to file a petition to validate a bond issue in such school district, even though such bond issue had apparently been authorized by the required number of votes, because the election for bonds was held under no law prescribed by the General Assembly for holding an election for bonds in a district created out of two or more counties without regard to county lines. The County of Montgomery is in the Oconee Judicial Circuit, and the County of Toombs is in the Middle Judicial Circuit. The parties agreed that the questions raised by the demurrers should be adjudicated by the court before hearing testimony on the validation proceeding; and the case was then submitted to the judge on the demurrers, which, after consideration, he overruled. To this judgment the intervenors excepted.

In the bill of exceptions it is stated that the demurrers filed by the intervenors raise two questions the determination of which is controlling in the case. They are: First, can a school district or consolidated school district be lawfully created out of parts of two counties by "concurrent consent and action" of the county boards of

education of said two counties? Second, if it may, does the law-
provide the manner of holding an election in such a district for
the purpose of voting bonds to build and equip a schoolhouse there-
for and the method of validating such bond issue? Under statutes
relating to both of these questions, to which reference will be made
later, an affirmative answer should be given to both of them. But
inasmuch as it is insisted that the creation of the Alston Con-
solidated School District by the boards of education of the Counties
of Montgomery and Toombs, by concurrent consent and action of
the boards under the act of 1919 (Acts 1919, p. 334, sec. 118), is
unconstitutional and void because section 118 of said act is in viola-
tion of article 8, section 4, paragraph 1, of the constitution, inas-
much as that provision "limits the right of boards of education to
the creation of school districts and consolidated school districts to
territory embraced in the county in which such boards of educa-
tion are serving, and the General Assembly of this State was and
is without constitutional authority to give to county boards of
education of two or more counties the power and authority to
create school districts or consolidated school districts embracing
territory from two or more counties without regard to county line,"
we think that a constitutional question is raised by the demurrer,
and there is an exception to the judgment overruling that demurrer.
And that judgment is further excepted to upon the ground that
the court erred in overruling the demurrer and in refusing to dis-
miss the cause of action, because, as it is urged in the exception,
"the General Assembly of Georgia has prescribed no law for vot-
ing on the question of issuing bonds to build and equip school-
houses in a school district or consolidated school district created
by 'concurrent consent and action' of the county boards of educa-
tion of two or more counties, without regard to county lines, and
a mere vote on the question of the creation of a bonded debt on
such school district, authorized at an election held under no law of
this State prescribed for holding such an election, is not a sufficient
authorization of a bonded debt that will comply with the constitu-
tional prohibition against the creation of a debt. Such an election
is in violation of artcle 7, section 7, paragraph 1 of the constitution
of this State, as well as in violation of article 11, section 1, para-
graph 1."

Upon consideration of all the constitutional provisions which

relate to the first question here involved, we are of the opinion that the court did not err in overruling the demurrer. The constitution of 1877, as originally adopted, contains the following provision: "Authority may be granted to counties upon the recommendation of two grand juries, and to municipal corporations upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits, by local taxation." Art. 8, sec. 4, par. 1. This provision in the constitution limited local school districts, so far as the taxing power was involved, to two classes of counties and municipalities. The General Assembly had no authority to create other school districts and confer upon them taxing powers. *Barber* v. *Alexander,* 120 *Ga.* 30 (47 S. E. 580). The provision just quoted was amended in 1903 (Acts 1903, p. 23), when the voters of the State, in accordance with the constitutional provision, adopted an amendment submitted under an act of the legislature. That amendment altered and amended article 8, section 4, paragraph 1, of the constitution so that it should read: "Authority may be granted to counties, militia districts, school districts, and to municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation; but no such laws shall take effect until the same shall have been submitted to a vote of the qualified voters in each county, militia district, school district, or municipal corporation and approved by two-thirds majority of persons voting at such election; and the General Assembly may prescribe who shall vote on such question." This was again altered by an amendment in 1919 (Acts 1919, p. 66), so as to be read as follows: "Authority is granted to the counties and municipal corporations, upon the recommendation of the corporate authority, to establish and maintain public schools in their respective limits by local taxation. . . An additional levy to that already allowed, not to exceed five mills, shall be permissible in independent local systems, municipalities, or school districts on a two-thirds vote of those voting."

There is difficulty in construing the section of the constitution in question, because it does not expressly provide for the establishment of "school districts;" but the section, under the last amendment, does distinctly recognize the existence of school districts, for it provides that "an additional levy to that already allowed,

not to exceed five mills, shall be permissible in independent local systems, municipalities or *school districts* on a two-thirds vote of those voting." (Italics ours.) At the same term of the legislature at which the proposal to change the section of the constitution referred to was made, by due enactment and before the constitutional amendment thus submitted was voted on, the legislature passed a law known as the Code of School Laws. Section 118 of that act (Acts 1919, pp. 288-363) provided for the creation of school districts without regard to county lines. This provision for school districts without regard to county lines was a part of our law before the amendment to the constitution last referred to was voted on; and while the provision in that section is somewhat vague, we think it should be so construed as to embrace, among others, school districts created without regard to county lines. The amendment of 1919 made provision for taxation to support the school systems thus established "on a two-thirds vote of those voting." The other step taken to establish this consolidated school district in question was in accordance with the laws upon that subject. In fact the regulation of the election, and that it was held in accordance with the statute in force, is not brought in question by the two assignments of error in the bill of exceptions, though it may be raised by arguments in the briefs. Our attention is called to the case of *Edalgo* v. *Southern Railway Co.*, 129 *Ga.* 258 (58 S. E. 846), where the authority of the legislature to create school districts so as to embrace territory situated in two or more counties was questioned, this court saying: "This amendment adds two new classes of school districts,—militia districts and school districts. The first are well-known and well-defined political divisions of the State. They are subdivisions of a county. Every militia district is wholly in one county. A militia district partly in two or more counties is unknown to the law, and would be an impossibility under our present system of political division. The school district is a new creation. It is an innovation. How must it be classified; as belonging to political divisions such as counties and militia districts, or with municipalities? A muncipality may be located in two or more counties; but whenever this has happened, confusion and inconvenience have inevitably resulted. It is to be noted that in the enumeration school districts follow counties and militia districts and precede municipal corporations. Is it not more

reasonable that the people intended that their new political division, school districts, should be of the nature of the militia districts, that is, wholly within the limits of one county, than that they should take on the characteristics of the municipal corporation and be subject to all the confusion and inconvenience necessarily attending a political division rent asunder by a county line? It is by no means free from serious doubt that a school district can be laid out so as to embrace territory situated in two or more counties. But we will not rule the present case on this point, and our utterances on this subject are merely to call attention to the grave doubts that arise as to the power of the General Assembly to create school districts the territory of which is located in different counties." Notwithstanding the doubt raised by this discussion of the question in the decision written by Presiding Justice Cobb, we have reached the conclusion announced above, especially in view of the fact that the decision referred to was rendered before the amendment of 1919 to the constitutional provision set forth above.

As to other exception which we have stated in full, we do not think that it is meritorious. Construing section 118 of the Code of School Laws in connection with other provisions in our statutes relating to schools (Code, Park's Supp. 1922, § 1439(a), Michie, § 1551(155), et seq.), and with the general statutory provisions as to elections, it can not be said that the General Assembly provided no law for "voting on the question of issuing bonds to build and equip schoolhouses in a school district or consolidated school district created by 'concurrent consent and action' of the county boards of education of two or more counties, without regard to county lines." Nor are the statutes which we have referred to above in violation of article 7, section 7, paragraph 1, of the constitution of this State.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*