16686

POWERS *ET AL.* v. STATE EDUCATIONAL FINANCE COMMISSION *ET AL.*

EDWARDS *ET AL.* v. STATE EDUCATIONAL FINANCE COMMISSION *ET AL.*

(73 S. E. (2d) 456)

434

*Messrs. Willcox, Hardee, Houck & Palmer,* of Florence, *for Petitioners,*

*Messrs. Paul A. Sansbury,* and *Samuel Want,* of Darlington, *for Respondents,*

*Messrs. Clifton & Cuttino,* of Sumter, *for intervening Petitioners,*

*Messrs. T. C. Callison, Attorney General,* and *James S. Verner, Asst. Attorney General,* of Columbia, *for the Educational Finance Commission for South Carolina; Henry C. Jennings,* of Bishopville, *for Lee County Board of Education;* and *L. E. Purdy,* of Sumter, *for Sumter County Board of Education, Respondents,*

November 14, 1952.

OXNER, Justice.

On account of the public importance of the question involved and the desirability of an early determination thereof, we permitted this action to be brought in the original jurisdiction of this Court. While other issues are raised, it is only necessary to decide the folowing:

(1) Does Section 5, Article 11 of the Constitution prohibit the General Assembly from authorizing the formation of a school district embracing an area lying in two or more counties, or from authorizing the annexation of territory in one county to an adjoining school district in another county?

(2) If not, has the General Assembly authorized the State Educational Finance Commission to make such annexation or to consolidate school districts lying in different counties without the approval of both county boards of education?

For a number of years high school students from an area of Darlington County formerly constituting Anderson School District No. 11, have been attending the Timmonsville High School, located in that portion of Florence County formerly constituting school district No. 16, but which is now a part

of school district No. 4 of that county. It is alleged that this arrangement has proved convenient and desirable to all concerned. All of the school districts of Darlington County have been consolidated by the county board of education and now constitute one school district embracing the entire county. The patrons of old Anderson School District desire to continue sending their children to the Timmonsville High School and have asked that this area be annexed to or consolidated with school district No. 4 of Florence County in which the Timmonsville High School is now located. The County Board of Education of Florence County is in favor of the proposed consolidation, but that of Darlington County is not. Upon the refusal of the latter board to endorse its approval, the residents and patrons of the area formerly constituting Anderson School District No. 11 filed with the State Educational Finance Commission, hereinafter referred to as the Commission, a petition requesting that body to effect the desired annexation or consolidation. The Commission declined to do so upon the ground that it was without authority to consolidate school districts located in different counties unless approved by both county boards of education.

Thereafter this action was instituted by petitioners, as taxpayers, residents and patrons of old Anderson School District, who, after setting forth the facts hereinabove stated, ask that this Court issue a mandamus requiring the Commission to prescribe reasonable rules and regulations relating to the matters set forth in the petition, and further requiring said Commission to assume jurisdiction over the controversy existing between the petitioners and the County Board of Education of Darlington County. They also ask for a declaratory judgment that the Commission is empowered to effect desirable consolidation of school districts lying in different counties where the county boards of education of the respective counties disagree as to the proposed consolidation. On August 18, 1952, the Chief Justice of this Court issued an order requiring the Commission and the County Board of Education of Darlington County to show cause before

this Court at the October term why the relief sought should not be granted. In due course a separate demurrer was filed by each of the respondents raising among other questions, the two stated at the beginning of this opinion.

By permission of the Chief Justice, certain freeholders and patrons of several districts in Lee and Sumter Counties were permitted to intervene. Their petition presents a situation similar to the one we have just described and raises in the main the same legal questions. It is alleged "that for several years past arrangements have been in effect for the education of grammar grade students in the St. Charles area of Lee County and in that portion of Lee County lying near the Town of Mayesville, which is in Sumter County and near the Lee County line, at the public schools situate at Mayesville, in Sumter County; that for several years arrangements have also been in effect for the education of high school students in the Mayesville area of Sumter County at the public school situate at St. Charles, in Lee County; that for several years, pursuant to said arrangements between the trustees of the school districts so adjacent to each other in Lee County and Sumter County, students in the two areas have been exchanged as aforesaid, and for some six or seven years exchange of students between said two areas has taken place and all phases of educational endeavor have been actively and cooperatively pursued on a cordial basis, resulting in greatly bettering the educational opportunities of all students, and accomplishing same on a sound and economical basis of established worth and value to said students and to your petitioners and other persons similarly situated."

These petitioners state that the patrons and residents of the districts mentioned desire that a school district be established embracing the area of St. Charles, Elliott, Oswego, and Mayesville. It is further alleged in the petition that in June, 1951, a joint meeting was held of the Sumter and Lee County Boards of Education for the purpose of considering and discussing the establishment of the proposed new

district; that although the Sumter County Board of Education was cooperative and anxious to work out some reasonable solution of the problem, the Lee County Board of Education refused to agree to the proposal and declined to cooperate in any manner; and that in June, 1952, a petition was filed with the State Educational Finance Commission asking that body to assume jurisdiction of the controversy but the Commission refused to do so, stating that it was without authority to create, or compel county boards of education to agree to the formation of, a school district embracing areas in two or more counties. The relief sought by the petitioners is substantially the same as that asked in the Darlington-Florence controversy.

Upon the filing of the foregoing petition, the Chief Justice of this Court, on September 3, 1952, issued an order requiring the State Educational Finance Commission and the County Boards of Education of Lee and Sumter Counties to show cause before this Court at the October term why the relief sought should not be granted. A joint demurrer was filed by the respondents raising the two questions heretofore mentioned, along with various other questions.

We shall first discuss the constitutional question. Section 5, Article 11, of the Constitution of 1895, provides in part: "The General Assembly shall provide for a liberal system of free public schools for all children between the ages of six and twenty-one years, and for the division of the Counties into suitable school districts." It will be noted that this provision does not expressly prohibit the General Assembly from creating a school district from territory lying partly in each of two or more counties. But it is argued that the duty imposed upon the General Assembly of dividing the counties into suitable school districts contemplates and clearly implies that each school district must lie wholly within the limits of one county.

In *State ex rel. Redman v. Meyers, County Superintendent of Schools*, 65 Mont. 124, 210 P. 1064, 1065, the Court said: "A school district is merely a political subdivision of

the state, created for the convenient dispatch of public business. In the absence of constitutional limitations, the Legislature may create or abolish a district or change or rearrange the boundaries of an existing district, and by the same token it may create joint districts from territory lying in adjacent counties." To the same effect, see 78 C. J. S., Schools and School Districts, § 32(b).

For more than half a century we have had legislation authorizing the creation of school districts embracing parts of two counties. Section 1071, Volume 1 of the Revised Statutes of South Carolina, 1893, authorized the county boards of examiners, when necessary, to include "portions of two adjacent Counties" into "one school district." In 1896, the year following the adoption of our Constitution, the General Assembly, by Act No. 63, 22 St. 150, provided, Section 31, that "the County Boards of Education shall divide their Counties into convenient school districts, as compact in form as practicable," and further provided, Section 35, "that whenever it shall happen that by reason of the location of special school districts portions of two adjacent Counties should for convenience be included in one school district, the County Boards of Education of such Counties are hereby authorized and directed in joint conference to make such regulations as will enable such sections to be established into a separate school district." This last mentioned section was incorporated as Section 1209 in Volume I of the Code of 1902.

The Constitution of 1868, Article 10, Section 3, provided that "the General Assembly shall * * * provide for a liberal and uniform system of free public schools throughout the State, and shall also make provision for the division of the State into suitable School Districts." If this phraseology had been followed in the Constitution of 1895, the question now before us would present no difficulty.

It is rather singular in view of the legislation which we have reviewed, that the question now raised has never been passed upon by this Court. We held, however, in *Tindall*

*v. Byars,* 217 S. C. 1, 59 S. E. (2d) 337, that Section 5, Article 11, did not prohibit the General Assembly from creating a school district embracing the entire area of a county, and in *Smith v. Lexington School District No. 1,* 219 S. C. 191, 64 S. E. (2d) 534, that this section of the Constitution was not violated by an act authorizing a county board of education to divide the county into new school districts by enlarging high school districts. In *Moseley v. Welch,* 209 S. C. 19, 39 S. E. (2d) 133, 140, we said: "It will be observed that the Constitution, as now amended, places very few restrictions on the power of the General Assembly in the general field of public education. It is required to provide 'for a liberal system of free public schools,' but the details are left to its discretion. While the Constitution directs that the counties shall be divided into suitable school districts, nothing is 'said therein as to the number or character of schools to be established or maintained in these districts, these things being left to the legislative power'." In *Walker v. Bennett,* 125 S. C. 389, 118 S. E. 779, 780, the Court observed: "The Constitution contains no delegation of power to the General Assembly in reference to the consolidation of school districts and no limitation of its power in reference thereto; and consequently its powers in regard thereto are referable to the reservoir of general powers, except when limited by the Constitution."

Section 5, Article 11, of the Constitution should be liberally construed. Its obvious purpose was to give all the children of the State an opportunity to attend free public schools. We do not think there was any intention to place a restraint on the General Assembly in the accomplishment of this purpose by limiting the formation of a school district to an area lying wholly within the limits of one county. The framers of this Constitution were aware of the policy then prevailing of forming school districts across county lines when necessary for the convenience of the children living in the area involved. If there had been any intention to change this policy, it would have been clearly ex-

pressed in the Constitution. Proper consideration must be given to the fact that the General Assembly of 1896, composed of many who were also members of the constitutional convention of 1895, evidently construed Article 11, Section 5, as permitting the creation of a school district embracing territory in two counties. This is a contemporary interpretation of the most forceful nature. Also of significance is the fact that this policy has remained unchallenged for more than fifty years. In *Simpson v. Willard,* 14 S. C. 191, the Court said: "It is a rule of common sense, recognized and adopted by judges and text writers as a rule of law, that in doubtful questions of construction, arising under statutes and constitutions, due weight should be given to cotemporaneous exposition and usage." Also, see *Brown v. Moseley,* S. C., 71 S. E. (2d) 591.

While the question is a close one, it is our conclusion that the General Assembly may authorize the formation of a school district embracing territory situated in two or more counties. It may authorize the consolidation of school districts lying in different counties. It may authorize the annexation of territory in one county to an adjoining school district in another county. It may create, or authorize the creation of, a district comprising the whole of one county and part of an adjacent county.

The case of *Sharpe v. Alston Consolidated School,* 173 Ga. 345, 160 S. E. 374, tends to sustain the foregoing conclusion, while that of *Parks v. West,* 102 Tex. 11, 111 S. W. 726, tends to sustain a view different from that which we have adopted.

Having determined that the General Assembly is empowered to authorize the formation of a school district embracing parts of two counties or to consolidate districts lying in different counties, there remains the question of whether such authority has been delegated to the State Educational Finance Commission. It is claimed that the Commission is empowered to consolidate school districts so situated by Act No. 379 of the 1951 Acts of the

General Assembly, 47 St. at L. 546. This Act must be considered in the light of the previous legislation relating to the subject under discussion, which we shall now review.

As previously pointed out, as far back as 1896, county boards of education were authorized to include in one school district "portions of two adjacent counties." 22 St. 150, Section 35. This section is now incorporated in the 1942 Code as Section 5341. Under the terms of Section 5319 of the 1942 Code, county boards of education were authorized to create new school districts "upon the petition of at least one-third of the qualified electors embraced within the limits of such proposed school district," and in some counties there was also required the consent of a majority of the electors residing in the area involved. Section 5319 further provided: "Whenever territory embraced in two or more counties is proposed to be formed into one school district, the same may be formed by the joint action of the board of education of the respective counties as herein provided for the formation of school districts in a county." Section 5342 of the 1942 Code is in part as follows: "Whenever two or more school districts in this State desire to consolidate for high school purposes or for any other purpose and one or more of them is situate in an adjoining county to that in which the others are situate, petition may be circulated and signed and presented to the county board of education of the respective counties in which the said districts are situated as is now provided by law for the consolidation of school districts under the provision of section 5319. Upon receipt of such petition or petitions duly signed by the requisite number of persons, the county boards of education of such counties shall arrange a joint meeting for the purpose of passing upon the question of consolidation, and may, if a consolidation is deemed wise and expedient by a majority of the members of each of the said boards, consolidate the said districts for the purpose or purposes specified in the petition."

By Act No. 1037 of the 1950 Acts of the General Assembly, 46 St. at L. 2504, Section 5319 of the 1942 Code was

amended so as to read, omitting the portions not pertinent to this controversy as follows:

"The school districts of the various counties shall not be altered, nor consolidated, nor divided except by Act of the General Assembly of South Carolina relating to one or more counties or by authorization of the County Boards of Education as provided in subsections (a), (b) or (c) herein.

"(a) With the written approval of the Senator and the entire House Legislative Delegation from the county involved;

"(b) Upon the written petition signed by at least four-fifths of the qualified electors embraced within the limits of each of the school districts involved, * * *;

"(c) Upon the written petition signed by at least one-third of the qualified electors embraced within the limits of each of the school districts involved, * * * and if approved favorably by a majority of the qualified electors of each of the school districts involved at an election called by the County Board of Education for that purpose;

"Provided, However, All of the school districts of any County may be consolidated into a single school district embracing the entire county in the manner provided by this section for the formation or consolidation of school districts, and whenever territory embraced in two or more counties is proposed to be formed into one school district, the same may be formed by the joint action of the Board of Education of the respective counties as provided in this section for the formation of school districts in a county."

It will be observed that in all of the statutes which we have reviewed, the formation of a school district comprising parts of two counties or the consolidation of school districts lying in different counties must be approved by both county boards of education. We now turn to Act No. 379 of the 1951 Acts of the General Assembly, 47 St. at L. 546, under which it is claimed that the State Educational Finance Commission may order such consolidation without the joint

action of the county boards of education of the counties in which the school districts are located.

The General Assembly sought in the foregoing act to provide a more efficient public school system for South Carolina. It recognized that the burden of providing adequate education for the children of this State cannot be borne in its entirety by the respective local taxing units and that a system of State aid for school buildings must be provided. To finance a program of constructing school buildings and other school facilities, the General Assembly authorized the issuance of bonds not to exceed at any one time the sum of $75,000.000.00, and the further sum of not exceeding $7,500,000.00 for the acquisition of school buses. There was enacted a general retail sales tax, the revenue from which was pledged for the retirement of the bonds so authorized. In *State ex rel. Roddey v. Byrnes, Governor,* 219 S. C. 485, 66 S. E. (2d) 33, we sustained the retail sales and use tax imposed by this act and upheld the validity of the bonds to be issued thereunder.

A detailed review of this lengthy act is unnecessary. We shall only refer to those portions pertinent to this controversy. In Article 3, a State Educational Finance Commission is created. Sections 3 and 4 of this article are as follows:

"The Commission shall prescribe and promulgate, in the manner provided by law, reasonable rules and regulations to carry out the provisions of this Act, and such rules and regulations shall have the full force and effect of law. It shall disburse such funds as are provided by the General Assembly and shall have such further powers as are committed to it by this Act and further enactments. It shall promote the improvement of the school system and the physical facilities of the same. It shall make plans for the construction of necessary public school buildings. It shalll make surveys incident to the acquisition of sites for public schools. It shall seek the more efficient operation of the pupil transportation system. *It shall effect desirable consolidations of*

*school districts throughout the entire State.* And, it shall make provision for the acquisition of such further facilities as may be necessary to operate the public school system in an efficient manner. (Italics ours.)

"As soon as practicable, the Commission shall make a survey of the entire school system, which shall set forth the needs for new construction, new equipment, new transportation facilities, and such other improvements as are necessary to enable all children of South Carolina to have adequate and equal educational advantages."

Under the terms of Section 6, Article 3, "Effective May 1, 1951, all County Boards of Education as now established are hereby abolished except where County Boards of Education are now composed of seven (7) or more members. As of that date, there are hereby created and established in all counties in the State, where such Boards are abolished, County Boards of Education to be composed of seven (7) members * * *."

The pertinent portion of Section 7 is as follows:

"All the powers and duties of existing County Boards of Education shall either be continued or are hereby devolved upon the County Boards as constituted in this Act. In addition thereto County Boards of Education are herby authorized and empowered to consolidate schools and school districts, in whole or in part, whenever, in their judgment, the same will promote the best interests of the cause of education in the respective counties.

* * *

"When two or more districts are consolidated under the provisions of this Act, the County Board of Education shall file a copy of the Order of Consolidation in the office of the Clerk of Court and with the State Educational Finance Commission, which filing shall complete the consolidation of such districts for all intents and purposes."

Under the terms of Article 4 the Commission is authorized to make contributions or grants to the various school

districts of the State on the basis of fifteen dollars "for each child in daily average attendance during each school year." Said grants are to be used for establishing and maintaining adequate physical facilities for the public school system. All expenditures of funds so allocated must be approved by the Commission. In order to guide the Commission in passing upon requests for the use of grants, the county boards of education are required to prepare a survey of necessary capital improvements, showing existing facilities, desirable consolidations and new construction and physical facilities deemed necessary and desirable for the efficient operation of the schools. "The Commission is authorized in its discretion to deny all applications for the use of funds of the said public school Building Fund from any county until such time as an acceptable and reasonably satisfactory plan, looking particularly to efficiency through consolidations of school districts, has been submitted by the County Board of Education, and all applications from school districts or operating units shall conform to the plan of the County Board of Education."

By Article 5 the control and management of all school bus transportation in the State is vested in the Commission.

In the Statement of policy approved by the Commission as a guide to county boards of education in carrying out the purpose of the foregoing act, the following appears: "In many instances reorganization of administrative units (consolidation of school districts) can best be effected by disregarding county lines for school district purposes. Nearly every county will have small border areas where children have been attending schools in the adjoining county. School districts should conform as nearly as possible with the natural socio-economic boundaries of a community. County Boards of Education of adjoining counties should meet together and work out desirable consolidations where overlapping occurs."

Petitioners contend that the foregoing constitutes a rule and regulation of the Commission having the force and effect

of law, and that the power to make consolidations across county lines is granted to the Commission by the following provision in Section 3, Article 3 of the 1951 Act: "It [the Commission] shall effect desirable consolidations of school districts throughout the entire State." It is said that the 1951 Act impliedly repealed and superseded the previous legislation relating to the consolidations of school districts.

We are not in accord with the foregoing view. Section 7, Article 3, of the 1951 Act expressly provides that "all of the powers and duties of existing County Boards of Education shall either be continued, or are hereby devolved upon the County Boards as constituted in this Act." Accordingly, the powers vested in the county boards of education by the Act of 1950, including the power to create, by the joint action of the boards of education of the counties involved, a school district embracing territory in two or more counties, are preserved. However, in addition to the powers previously given, Section 7, Article 3 of the 1951 Act authorizes county boards of education "to consolidate schools and school districts, in whole or in part, whenever, in their judgment, the same will promote the best interests of the cause of education in the respective counties." The effect of this last named provision is to enlarge the powers previously given to county boards of education by enabling them to consolidate school districts without a petition being filed or election held and without the consent of the legislative delegation.

The direction contained in Article 3, Section 3 of the 1951 Act that the Commission "shall effect desirable consolidations of school districts throughout the entire State" cannot be lifted out of its context and reasonably construed as giving the Commission the power to make consolidations of school districts lying in different counties without the consent of the boards of education of the counties in which said districts are situated. It was never contemplated by the 1951 Act that county boards of education should be divested of all control or power with reference to the establishment and consolidation of school dis-

tricts. The authority vested in the Commission with reference to such matters is of an advisory and regulatory nature. Before any district may receive a grant of State funds for school buildings and other capital improvements, plans must be submitted to the Commission and if not acceptable, the Commission may refuse to advance funds to the unit involved. The Commission may suggest consolidations. It may request county boards of education to meet together and seek to work out desirable consolidations of school districts across county lines. It has considerable voice in these matters through the power to withhold funds if the county boards refuse to submit proper plans for consolidation. But the Commission is not empowered to make a consolidation of school districts lying in different counties where either county board of education refuses to agree thereto. The statement of policy formulated by the Commission merely constitutes criteria which the Commission says will be applied in passing upon administrative plans submitted to it. The Commission has not undertaken to assume a power not granted to it by the General Assembly.

It may not be amiss to state that in neither of the petitions before us is it sought to appeal from the action of a county board of education in refusing to agree to a consolidation. But it is contended that the Commission should be ordered to require the Darlington County Board of Education to meet with the Florence County Board of Education for the purpose of considering the matters complained of in the Florence-Darlington case and that the Lee County Board of Education should be compelled to meet in joint session with the Sumter County Board of Education for the purpose of seeking asolution of the problem presented in the Sumter-Lee case. But the Darlington County Board of Education has refused to agree to the proposed consolidation in the first case and the Lee County Board in the other case. We know of no authority by which either we or the Commission can compel these boards of education to consider the matter further.

It follows that the Commission was correct in refusing to assume jurisdiction of these controversies upon the ground that it was not empowered to effect the proposed annexations or consolidations without the consent of the respective county boards of education.

The foregoing discussion disposes of the principal questions in both cases. Certain issues were also raised under statutes relating only to the counties involved in this controversy. These need not be determined. We have also not considered various procedural questions raised by some of the respondents, since the state-wide importance of the major issues required an early decision on the merits.

The demurrers are sustained; both petitions are dismissed; and the applications for writs of mandamus are denied.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.