17517

C. P. WILLIAMS *et al.,* Appellants, v. MARION COUNTY BOARD
OF EDUCATION *et al.,* Respondents

(107 S. E. (2d) 640)

*Elliott D. Turnage, Esq.,* of Darlington, *for Appellants,.*

*Messrs. C. W. Derrick, Woods & Woods* and *J. Ralph Gasque,* of Marion, *for Respondents,* 

March 12, 1959.

TAYLOR, Justice.

This appeal presents the sole question of whether or not Brittons Neck School District No. 4 of Marion County is a valid and lawfully established school district.

Plaintiffs as electors, taxpayers, and parents of Negro school children, who reside in Lower Marion County School District No. 4, brought this action seeking to enjoin the Marion County Board of Education from interfering with children attending Terrells Bay Elementary and High School, located in Centenary, South Carolina, within Lower Marion County School District No. 3.

Upon a hearing on the rule to show cause, Honorable J. Woodrow Lewis as presiding Judge of the Twelfth Judicial Circuit, denied the petition for a temporary restraining Order but ruled that the *status quo* relative to school attendance should be maintained for the remainder of the existing school term. Pursuant to an Order of reference limited to taking and reporting the testimony and evidence, a reference was held September 20, 1956, before Honorable D. B. McIntyre, Judge of Probate of Marion County. By consent of the parties, J. W. Coleman, who succeeded L. J. Hendricks as Superintendent of Lower Marion County School District No. 3, was made a party defendant. On September 13, 1957, plaintiffs made a motion before Judge J. Frank Eatmon, presiding Judge, that the Order of Judge J. Woodrow Lewis

providing for maintaining the *status quo* as to school attendance be continued pending a final determination of the action. This motion was granted for pupils in grades 7 through 12 but denied as to pupils attending grades 1 through 6. On said date, Judge Eatmon also issued an Order allowing the parties to amend the pleadings, if they so desired, and again referred the matter to Judge McIntyre to take and report the testimony.

Pursuant to said Order, a reference was held before Judge McIntyre, who filed his report on June 27, 1958. Upon motion being made by plaintiffs for a determination of the issues involved herein, Honorable G. Badger Baker on July 11, 1958, issued an Order denying plaintiffs' prayer for an injunction and dismissed the complaint, but provided nevertheless that until modern facilities are provided by Brittons Neck School District No. 4 of Marion County, pupils attending Grades 7 through 12 be permitted to attend school at the Terrells Bay School in Lower Marion County School District No. 3.

It is from the Order of Judge G. Badger Baker, dated July 11, 1958, that plaintiffs now appeal.

Prior to 1951, Marion County was divided into a number of school districts, large and small, a situation similar to that existing in practically all of the counties in the State. In that year, legislation was enacted giving the County Board of Education the authority "to consolidate schools and school districts in whole or in part, whenever in its judgment such consolidation would promote the best interests of the causes of education in the county." Thereafter, in June, 1951, Pine Grove School District No. 2 and Brittons Neck School District No. 3 were consolidated. Centenary District No. 9 and Rains District No. 11 were consolidated in October, and in December of that year all of the school districts were consolidated into three districts and designated as Marion District No. 1, Mullins District No. 2, and Lower Marion County District No. 3.

In 1954, the Brittons Neck and Gresham area, formerly designated as "Old School Districts Nos. 2, 3, and 5," were separated from Lower Marion County District No. 3 and formed into a separate district to be known as Lower Marion County District No. 4, generally referred to as Brittons Neck District No. 4. This division was approved by the Senator, the entire house delegation and the State Educational Finance Commission. Thereafter, it was ratified by Legislative Act No. 63, and signed by the Governor on March 1, 1957.

Plaintiffs are residents of District No. 4 and have ▇▇▇ children who are of elementary and high school age.
There is a new modern elementary or grammar school in District No. 4, but the high school facilities are not equal to or as modern as those in District No. 3. For this reason, permission was granted by the County Board of Education to pupils in the high school to transfer from District No. 4 to District No. 3, while the elementary pupils who have modern facilities are required to attend in District No. 4. Plaintiffs seek to require the transfer of all pupils from District No. 4 to District No. 3, contending that the action of the Board is in fact not a consolidation but an attempt to split up and divide a previously existing school district and that existing legislation does not delegate to the Board such power. No question has been raised as to the authority of the County Board of Education to consolidate the school districts of Marion County in accordance with the general Act, but the question is whether or not the County Board of Education would have authority to divide the Lower County District No. 3 into two districts after a consolidation had previously been effected and a valid school district created.

Act 1037 of the Acts of 1950 of the General Assembly, now Section 21-112, Code of Laws of South Carolina 1952, appears as follows:

"Unless otherwise expressly provided, the school districts of the various counties shall not be altered or divided except:

"(1) By act of the General Assembly relating to one or more counties; or

"(2) By authorization of the county boards of education under the following conditions:

"(a) With the written approval of the Senator and the entire house legislative delegation from the county involved;

"(b) Upon a written petition, signed by at least four fifths of the qualified electors embraced within the limits of each of the school districts involved, which shall state plainly to the county board of education the action petitioned and shall also bear the signed certificate of the members of the county board of registration that the number of electors who signed the petition represent at least four-fifths of the qualified electors embraced within the limits of each of the school districts involved; or

"(c) Upon the written petition, signed by at least one-third of the qualified electors embraced within the limits of each of the school districts involved, which shall state primarily the action petitioned and shall bear the signed certificate of the members of the county board of registration that the number of the electors embraced within the limits of each of the school districts involved; if such consolidation be approved favorably by a majority of the qualified electors of each of the school districts involved at an election called by the county board of education for the purpose."

It is apparent from the foregoing that two methods are provided therein for the alteration, consolidation, and division of the school districts of the various counties. The first method is by Act of the General Assembly. The second method is by the County Board of Education with one of three alternatives; (a) With the written approval of the Senator and the entire house legislative delegation; (b) Upon the written petition signed by at least four-fifths of the qualified electors; and (c) an election held for that purpose upon written petition of at least one-third of the qualified electors of the districts involved.

The County Board of Education of Marion County followed subsection (a) of the second method above referred to in dividing Lower Marion County School District No. 3 into two districts which was by authorization of the County Board of Education with the written approval of the Senator and the entire house legislative delegation of the County.

We do not agree with Appellants' contention that it was necessary to comply with subsections (a) and (b) in order to lend legality to the creation of the district. Such interpretation would require reading into the statute the word "and" immediately after subsection (a). Neither do we agree with the contention that Section 21-114.1, Code of Laws of South Carolina 1952, repealed or altered the previously existing law with respect to altering, dividing or consolidating school districts within the county. Such section rather provides an additional method by which school districts might be consolidated.

The questioned school districts all lie within the bonds of Marion County; hence, the case of *Edwards v. State Educational Finance Commission*, 222 S. C. 433, 73 S. E. (2d) 456, cited by Appellants, is not authority for their position.

Appellants by Exception No. 2 attempt to raise some question regarding the constitutional requirements of the State of South Carolina and the United States of America, with reference to equal protection of the law. It is apparent from the record, however, that no constitutional question is involved. Adequate facilities exist in Brittons Neck School District No. 4 for children of elementary age, and the County Board of Education has made provision for the pupils of high school age by transferring them to School District No. 3 where adequate facilities do exist until such time as modern facilities can be provided in Brittons Neck School District No. 4. When adequate facilities are completed in District No. 4, there will be no difference in the educational facilities provided by one district as compared with that of the other.

For the foregoing reasons, we are of opinion that all ex-
ceptions should be dismissed and the Order appealed from
affirmed and It Is So Ordered.

Affirmed.

STUKES, C. J., and OXNER, LEGGE and MOSS, JJ.,
concur.