## 18455

Lewis H. BOATWRIGHT, Jr., a taxpayer and resident of Aiken County and of The School District of Aiken County, individually and representing all other persons similarly situated, R. H. Holstein, Jr., a resident and taxpayer of that portion of Saluda County lying within the Monetta-Ridge Spring Attendance Area No. 5, individually and representing all other persons similarly situated, and Ray Rauton, a resident and taxpayer of that area of Edgefield County lying within the Monetta-Ridge Spring Attendance Area No. 5, individually and representing all other persons similarly situated, Appellants, v. J. George McELMURRAY, Chairman, C. T. Marsh, J. C. Busbee, J. P. Kneece, B. F. Gunnels, Jr., Raymond Barton, Robert H. Dicks, Gordan V. Munday, R. W. Boylston, constituting the board öf Trustees of the School District of Aiken County, The State of South Carolina and Daniel R. McLeod, as Attorney General for the State of South Carolina, Respondents.

(146 S. E. (2d) 716)

200

*George H. Grant, Esq.,* of Aiken, *for Appellants,*

*Messrs. Henry Busbee,* of Aiken, *Sinkler, Gibbs & Simons,* of Charleston, and *Daniel R. McLeod, Attorney*

*General,* of Columbia, *for Respondents,*

February 7, 1966.

BRAILSFORD, Justice.

This is a class action for declaratory judgment as to the validity of a three million dollar bond issue, which the defendant Board of Trustees of the School District of Aiken County proposes to sell to finance a school construction and renovation program, and as to the legality of the expenditure of a portion of the proceeds of the bonds outside of Aiken County but within a school attendance area composed of portions of Aiken, Saluda and Edgefield Counties. The three plaintiffs, who contest the bond issue for themselves and others similarly situated, are all residents of the attendance area and, of them, one is a resident and taxpayer of each of the three counties involved.

The circuit court overruled all objections to the sale of the bonds and expenditure of the proceeds and plaintiffs have appealed.

The School District of Aiken County was created in 1951 as the product of a countywide consolidation of school districts. In the same year, an amendment to Art. X, Sec. 5, Constitution of 1895, was ratified by which the permissible limit of the bonded debt of "any school district in Aiken County" was increased from 8% of the assessed value of the taxable property within the district to 25% thereof. The original 8% limitation imposed by this section of the constitution remains applicable in Saluda and Edgefield Counties.

The attendance area in question, which is designated as Monetta-Ridge Spring Attendance Area No. 5, was created by Act No. 271 of the Acts of 1953, 48 Stat. at Large 342. It consists of the Monetta attendance area of the School District of Aiken County, and the areas formerly constituting Ridge Spring School District No. 2 of Saluda County and Wimberly Branch School District of Edgefield County.

Plaintiffs contend that by this act and subsequent legislation relating to the attendance area, the designated school districts of Saluda and Edgefield Counties have been consolidated with the School District of Aiken County and made a part thereof. If these areas have been thus consolidated with the School District of Aiken County, the bonded debt of the consolidated district may not lawfully exceed the limitation imposed by the constitution on any segment thereof, i. e., 8% of the assessed value of the taxable property of the district. The amount of the proposed bond issue exceeds this limitation. Therefore, the key question on the appeal is the soundness of the conclusion of the circuit judge that the districts in question have not been consolidated.

The authority of the legislature to authorize consolidation of school districts of more than one county into a single district, or to accomplish this purpose directly by legislation, is not challenged. See Sections 21-112, 21-114, Code of

1962; *Walker v. Bennett,* 125 S. C. 389, 118 S. E. 779; *Edwards v. State Educational Finance Commission,* 222 S. C. 433, 73 S. E. (2d) 456. Direct legislative action is involved here, and whether consolidation has been accomplished depends upon the intention of the legislature as expresed in the pertinent acts of 1953, 1958 and 1960, to which we now refer in the order of their passage. An act of 1965, upon which defendants rely, was adopted after a special election held on May 18, 1965, in Aiken County had resulted in a vote of 5767 to 1234 in favor of the bond issue. This act will be discussed later.

The Act of 1953, supra, was entitled: An Act to Consolidate Ridge Spring School District No. 2 of Saluda County and Wimbery Branch School District of Edgefield County with the School District of Aiken County, and to Define the Purposes Therefor and the Powers Thereof.

Consistently with the title, it was enacted that the designated "portions of the counties of Saluda and Edgefield * * * and the School District of Aiken County, are consolidated for school purposes only to the end that a new and larger school attendance area shall be formed * * *." An area board of education was created with provision for representation thereon from "the present Monetta Attendance Area" of Aiken County and from the affected districts of Saluda and Edgefield Counties.

Provision for an area board followed the established pattern for the operation of schools in existing attendance areas in the School District of Aiken County, Sec. 21-1045, Code of 1962; and, again conforming to this pattern, the act provided that the schools in the new attendance area should be "supervised and administered by the County Board of Education of Aiken County in the manner now provided by law for the School District of Aiken County." By virtue of Sec. 21-1035.1, Code of 1962, the said County Board was and is, ex officio, the Board of Trustees of the School District.

The provisions of the act to which we have referred were appropriate to the declared legislative purpose to "Consolidate Ridge Spring School District No. 2 of Saluda County and Wimberly Branch School District of Edgefield County with the School District of Aiken County." No more was required because the incidents and effect of consolidation were already declared by general law. Sec. 21-114.3, Code of 1962. However, the act undertook to legislate against a uniform tax rate for school purposes throughout the consolidated district. It provided that the respective areas of Saluda and Edgefield Counties should "pay to the County Board of Education of Aiken County each year only that portion of the cost of maintenance and operation of the schools of the Monetta-Ridge Springs Attendance Area which is determined to be their respective share of the cost on a per pupil average attendance basis on all resident students of the respective counties."

The act clearly contemplated that there should be only one public school system in the attendance area, which should be operated for the benefit of the children from the designated sections of each county, who should have equal access to such schools. If the provisions of the act for unequal taxation had been challenged, serious constitutional questions would have arisen, both under Art. X, Sec. 5, Constitution of 1895, requiring uniformity of taxation, and under the equal protection clause of Art. I, Sec. 5. However, the act was not challenged, and schools were operated under it in Aiken and Saluda Counties by the Board of Trustees of the School District of Aiken County, for the benefit of children from the entire attendance area, until 1958, when this act was repealed and replaced by Act No. 946 of the Acts of 1958, 50 Stat. at Large, 1964.

The 1958 Act was in substantial part a re-enactment of that of 1953 but with two significant changes, as will be seen. The title of this act again bespoke the intention of the legislature to "Provide For The Consolidation Of Certain

School Districts In ·Aiken, Edgefield and Saluda Counties; * * *." Again, the provisions of the act were appropriate to the purpose expressed in its title, except that as to the Edgefield area, the provision of the 1953 act for contribution to the maintenance and operation of schools on an average pupil attendance basis was retained. This inharmonious feature was eliminated as to the Saluda area, which was made subject to an annual tax levy for school purposes to be determined by the County Board of Education of Aiken County.[1] Additionally, the act provided that the member of the County Board of Education of Aiken County from the attendance area in question[2] should be elected by the qualified electors of the portions of the three counties comprising the district.

Parenthetically, residents of the Saluda County area are excluded from voting for the Saluda County board by Sec. 21-3952, Code of 1962, in which the area excluded is identified as that "formerly embodied" in Ridge Springs School District No. 2 of Saluda County. The members of the corresponding board of Edgefield County are appointed by the Governor on recommendation of the county legislative delegation. Sec. 21-2552, Code of 1952.

Finally, by Act No. 709 of the Acts of 1960, 51 Stat. at Large 1691, the legislature amended the description of the area of Aiken County included in the attendance area and made provision, unnecessarily, as we view the case, for the expenditure of "capital outlay funds" by the County Board of Education of Aiken County in the attendance area without regard to county lines. The title of the act again recognized "The Consolidation Of Certain School Districts In

---

[1] No point has been made of the retention of this provision of the act as to Edgefield County, and we take no further notice of it. So far as the issues before us are concerned, the lawful consolidation of one of the areas with the School District of Aiken County is equivalent to the consolidation of both such areas.

[2] The members of the board are elected from districts, not countywide. Sec. 21-1031.

Aiken, Edgefield And Saluda Counties." The act referred to the Saluda area as that "formerly known as Ridge Springs School District No. 2" and to the Edgefield County area as that "formerly known as Wimberly Branch School District." After providing that the three areas "are hereby consolidated and designated as the Monetta-Ridge Spring Attendance Area No. 5," section one of the act concludes with this explicit declaration. "The attendance area shall for school purposes only constitute an integral part of the School District of Aiken County."

The foregoing review of the three acts leads inevitably ▮ to the conclusion that the legislature intended to unite the designated areas of Saluda and Edgefield Counties with the School District of Aiken County into a consolidated school district. The repeated and unequivocal statement of this purpose leaves no room for construction. We regard as unsound the view that consolidation of school districts for school purposes only, as declared by the legislature, results in something less than a consolidated district. Since school districts are formed and have their existence for school purposes only, it cannot soundly be held that the use of this phrase limited in any significant sense the legislative decree that the designated areas of Saluda and Edgefield Counties should be consolidated with the School District of Aiken County and should constitute integral parts thereof.

As already stated, an election on the bond issue was held May 18, 1965. The previous notice of it was printed only in a newspaper published in Aiken County and the only polling places listed in the notice were located in that county. Those in charge of the election simply proceeded on the theory that the bonds would be issued by the School District of Aiken County as originally composed.

Following the election, Act No. 389 of the Acts of 1965, 54 Stat. at Large 701, heretofore referred to, was adopted and approved for the purpose of validating the election and authorizing the issuance of the bonds. This act undertook to

construe the previous legislation relating to the attendance area and found that "it was never intended that any portion of either Edgefield or Saluda Counties be added to the School District of Aiken County, but that a relation contractual in nature and terminable at the will of the General Assembly, or at the will of the respective County Boards of Education of Aiken, Edgefield, and Saluda Counties be arranged on a basis, that by reason of the mutual benefits resulting * * * the county board would provide and operate schools and school facilities anywhere within Monetta-Ridge Spring and irrespective of the county lines."

Based upon the foregoing finding, it was enacted that "(t)he School District of Aiken County shall continue as established by the action of the county board of education on September 11, 1951, and shall be co-extensive with Aiken County itself. Its affairs shall continue to be conducted and its functions performed by the county board as now established."

The construction of a statute is a judicial function and responsibility. 16 C. J. S., Constitutional Law, § 112, page 499. Subject to constitutional limitations, the legislature has plenary power to amend statutes. However, a legislative interpretation of one previously enacted may not prevail over the clear meaning of the statutory language.

With due deference to the views of the legislature on this question of construction, as expressed in the 1965 act, we adhere to the conclusion that a consolidation of Ridge Springs School District No. 2 of Saluda County, Wimberly Branch School District of Edgefield County and the School District of Aiken County was effected by the prior legislation. Upon such consolidation, the consolidated district, retaining the name of the School District of Aiken County, succeeded to all of the property, rights and obligations of the constituent districts and the existence of the latter as separate entities was terminated. *Walker v.*

*Bennett,* 125 S. C. 389, 118 S. E. 779; *Miller v. Farr,* 243 S. C. 342, 133 S. E. (2d) 838. A constituent district could be restored to its former status only by incorporation anew as a school district. *Kearse v. Lancaster,* 172 S. C. 59, 172 S. E. 767.

The 1965 act was based upon the mistaken premise that the districts in question had not been consolidated and had retained their distinct entities. It does not purport to dissolve the consolidated district or to incorporate its components as school districts and cannot soundly be given this effect. The enactment in 1965 that the School District of Aiken County *shall continue* as established by the county board of education on September 11, 1951, is nugatory, because in 1965 the school district as originally constituted had no existence which could be continued.

The validity of the bond issue must be judged by the constitutional debt limitation applicable to the consolidated district, which, as already stated, is 8% of the assessed value of the taxable property within the district. The proposed bonded indebtedness would exceed this limitation and may not be lawfully incurred.

Reversed.

Moss, Lewis and Bussey, JJ., concur.

