## 18802

Augustine T. SMYTHE, Howard F. Burky, X. O. Bunch, Jr., William J. Clement, William F. Dickey, Jasper T. Hiers, Robert A. Patterson, Gilbert Snyder and Joseph W. Stewart, constituting the Board of Trustees of the Charleston County School District on and after July 1, 1968, and presently exercising all of the powers, duties and functions now devolved by law upon the County Board of Education of Charleston County, Plaintiffs-Appellants-Respondents, v. Jean S. STROMAN, Fred H. Momeier, Chester A. Wilson, Ben T. Austin, III, David P. Morris, Jr., Edward B. Condon, Leonard E. Newton, and Park B. Smith, representing respectively the taxpayers, property owners and residents of St. James Santee School District No. 1, Moultrie School District No. 2, James Island School District No. 3, Cooper River School District No. 4, St. John's School District No. 9, St. Andrew's School District No. 10, St. Paul's School District No. 23, and School District No. 20, all located within Charleston County, South Carolina; Bartley J. Riddock, as Treasurer of Charleston County; Pauline S. Koger, as Auditor of Charleston County; and Daniel R. McLeod, as Attorney General of the State of South Carolina, Defendants-Respondents-Appellants, and of which the Plaintiffs and the representative Defendants are, Appellants.

(162 S. E. (2d) 168)

278

*Henry T. Gaud, Esq.,* of Charleston *for Defendants-Appellants, Fred H. Momeier, Chester A. Wilson, Edward B. Condon* and *Park B. Smith,*

280

*Casper H. Padgett, Sr., Esq.,* of North Charleston, *for Defendants-Appellants, Jean S. Stroman, Ben T. Austin, III, Davis P. Morris, Jr.,* and *Leonard E. Newton,*

*Messrs. Sinkler, Gibbs, & Simons,* of Charleston, *for Plaintiffs-Respondents-Appellants,*

June 12, 1968.

*Per Curiam.*

This appeal involves the constitutionality and construction of Act No. 340 of the 1967 Acts of the General Assembly, 55 Stat. 470, which consolidates, effective July 1, 1968, the eight existing school districts of Charleston County into one county wide district. The several issues were presented to the lower court and resulted in an order invalidating the provisions of Section 11 but upholding the Act in all other respects. The order of the lower court correctly states and disposes of all issues in the case and the portion thereof which deals with the questions raised on appeal will be reported herewith.

Further brief comment is considered necessary only as to the basis of the holding with reference to the invalidity of Section 11, about which the main controversy centers.

The Legislature has by general statute provided that upon consolidation of school districts the liabilities of the original districts shall be assumed by the consolidated district. Section 21-114.3, 1962 Code of Laws (Quoted in the reported order of the lower court).

The present case is one of consolidation of existing school districts and presents no exceptional factual situation which would make Section 21-114.3 inapplicable. Therefore, ·the

general statute controls and invalidates the special provisions of Section 11.

Affirmed.

The Order of Judge SINGLETARY follows:

The plaintiffs constitute the Board of Trustees of the Charleston County School District on and after July 1, 1968 and presently exercise the functions of the County Board of Education of Charleston County pursuant to the provisions of Act No. 340 of the Acts of 1967 entitled "AN ACT TO CREATE THE SCHOOL DISTRICT OF CHARLESTON COUNTY AND TO ABOLISH THE COUNTY BOARD OF EDUCATION OF CHARLESTON COUNTY." They have instituted the captioned action pursuant to the Uniform Declaratory Judgments Act set forth in Chapter 24, Title 10, Code of Laws of South Carolina, 1962 in order to obtain the determination of various questions set forth in the complaint. The defendants include a taxpayer, property owner and resident of each of the eight school districts of Charleston County, the Charleston County Treasurer, the Charleston County Auditor and the Attorney General of the State of South Carolina. All of the defendants have filed answers and there is no dispute as to the material facts.

Act No. 340 of 1967 consolidates the eight existing school districts in Charleston County, effective July 1, 1968, into a single county wide school district known as The Charleston County School District. This School District will be co-extensive in area with Charleston County and will include the present eight school districts located in Charleston County. The following table shows as to each of the present school districts its pupil enrollment, estimated population, estimated value of school property, outstanding bonded debt, and assessed value.

| School District | Pupil Enrollment as of Nov. 27th, 1967 | Estimated Population as of July 1st, 1967 | Estimated Value of School Property as of January 1, 1968 | Outstanding Bonded Debt as of January 1, 1968 | 1967 Assessed Value |
|---|---|---|---|---|---|
| 1 | 1,331 | 5,089 | $ 740,000 | $ –0– | $ 632,165 |
| 2 | 4,747 | 17,436 | 3,155,500 | 386,000 | 6,531,090 |
| 3 | 5,899 | 22,112 | 3,400,000 | 631,000 | 9,034,205 |
| 4 | 19,944 | 94,595 | 16,998,160 | –0– | 39,271,750 |
| 9 | 3,046 | 10,477 | 1,626,100 | –0– | 1,732,618 |
| 10 | 8,607 | 32,986 | 4,816,000 | 108,000 | 19,007,413 |
| 20 | 11,355 | 67,130 | 14,024,961 | 1,820,000 | 25,713,922 |
| 23 | 3,629 | 12,077 | 1,899,500 | 1,000 | 2,479,128 |

In addition to the bonded debt set forth above, since January 1, 1968 James Island School District No. 3 has issued $70,000.00 General Obligation bonds and St. Andrew's School District No. 10 proposes to issue $750,000.00 General Obligation bonds.

The principal controversy in this litigation involves the validity of Section 11 of Act No. 340 of 1967 which reads as follows:

SECTION 11. Not to assume bonded indebtedness of present school districts—The Charleston County School District shall not assume any bonded indebtedness incurred prior to July 1, 1968, by any of the present school districts. The bonded debt of the present school districts incurred prior to July 1, 1968 shall remain the obligations of the respective constituent districts after July 1, 1968 which shall continue to be taxed accordingly. The provisions of Section 11 are not an essential inducement to the enactment of this act.

If the provisions of Section 11 are implemented, then the area of each existing school district with bonded debt will continue to be taxed after July 1, 1968 to provide debt service to repay the outstanding bonds of that school district as they become due. It is estimated that this millage would involve, for example, in 1968—7 mills in the area now included within Moultrie School District No. 2; 6 mills in the area now included in James Island School District No. 3; 5 mills in the area now included in St. Andrew's School District No. 10 (on the assumption that the additional $750,-

000.00 in bonds will be issued) and 8½ mills in School District No. 20. In that event, none of the other areas of Charleston County would be taxed for such debt service. If, on the other hand, the provisions of Section 11 of the Act are stricken and the School District of Charleston County assumes after July 1, 1968 the outstanding bonded indebtedness of the existing school districts, a uniform tax levy would be imposed throughout the County (estimated for the year 1968 at 3 mills) to provide debt service for the outstanding General Obligation bonds of the existing school districts. The net effect would be that the tax burden in Moultrie School District No. 2, James Island School District No. 3, St. Andrew's School District No. 10 and School District No. 20 would be reduced and that the tax levy in the remaining 4 school districts would include a 3 mills increase. Consequently, the determination of the issue involving Section 11 will have considerable effect upon the taxpayers of Charleston County.

While the plaintiffs argue that the entire Act should be sustained and that the indebtedness of the eight existing school districts need not be calculated in determining the amount of bonds which the School District of Charleston County may issue under the 8% constitutional debt limit, the plaintiffs are primarily concerned on this issue to obtain instructions. The controversy is between the taxpayers of debt free school districts on the one hand and the taxpayers of school districts which have bonded debt on the other hand. If Section 11 is stricken the taxpayers of School Districts No. 1, 4, 9 and 23 will be subjected to an additional tax levy estimated for the year 1968 at 3 mills and the tax levy in the remaining 4 school districts will be reduced.

It is clear from a reading of Section 11 that the General Assembly was uncertain as to whether or not it would withstand a Court test because the section expressly states that the provisions thereof are not an essential inducement to the enactment of this Act. The in-

clusion of this language means that in the event Section 11 should be stricken the General Assembly intended the remainder of the Act to stand as a complete piece of legislation.

The general law supports the proposition that upon a consolidation of school districts whereby the consolidated district succeeds to all of the assets of the former districts, then in that event the consolidated district likewise assumes all liabilities and obligations of the constituent districts. A sense of fair play recommends this result because the taxpayers of the former school districts, as such, are divested of their property, which passes to the consolidated district, and it would seem to follow that the consolidated district should assume their obligations, most of which have been incurred for the construction of school facilities.

In 1923 the South Carolina Supreme Court in the case of *Walker v. Bennett,* 125 S. C. 389, 118 S. E. 779, considered legislation by which five school districts of Greenville County were consolidated into a single school district. The Opinion states in part as follows:

Upon the consolidation of the districts by the legislative act the entity of the districts as such was destroyed. So far as the fiscal authority of the constituent districts was concerned, that was absolutely destroyed by the consolidation. The result was, however, not that the debts were not still subsisting obligations, but that they became obligations of the consolidated district, which likewise succeeded to the property of the constituent districts. The result is that the bondholders of the constituent districts have as security for their debts, not the separate property of the old school districts, but the entire property of the consolidated districts.

Recently in a 1966 decision in the case of *Boatwright v. McElmurray,* 247 S. C. 199, 146 S. E. (2d) 716, the South Carolina Supreme Court in finding that a consolidation of several school districts had taken place stated as follows:

Upon such consolidation, the consolidated district, retaining the name of the School District of Aiken County, succeeded to all of the property, rights and obligations of the constituent districts and the existence of the latter as separate entities was terminated.

There are other cases on this point, all of which indicate to me that a consolidated school district which succeeds to all of the assets and properties of the constituent districts must likewise assume their bonded debt, and this debt is to be calculated as part of the debt of the Charleston County School District under the 8% constitutional debt limit. *Moseley v. Welch*, 209 S. C. 19, 39 S. E. (2d) 133; *Tindall v. Byars*, 217 S. C. 1, 59 S. E. (2d) 337.

Finally, the rule has been codified as a part of the general law in Section 21-114.3, South Carolina Code of Laws, 1962, which reads as follows:

SECTION 21-114.3. Same; effect of consolidation.— Upon consolidation of any two or more school districts, all property, real and personal, and all assets of the districts forming the consolidated school district shall become the property of the consolidated district and all liabilities of the consolidating districts shall become the obligations of such consolidated district. Each such consolidated district shall be a body politic and corporate and its board of trustees shall have such powers as are provided by law.

Plaintiffs have pointed out some decisions which indicate that the legislature has certain discretion with regard to the disposition and apportionment of liabilities of constituent school districts in the case of consolidation. Nevertheless, I am satisfied that the decisions of the South Carolina Supreme Court referred to above and the general law as set forth in Section 21-114.3, South Carolina Code of Laws, 1962, quoted above, are controlling in the instant case. As a result Section 11 should be stricken and the obligations of the respective existing school districts assumed by the Charleston County School District. The de-

letion of Section 11, however, in no way affects the validity of the remainder of the Act which can stand with Section 11 stricken. *Cox v. Bates,* 237 S. C. 198, 116 S. E. (2d) 828.

The defendant taxpayers also argue that the entire Act should be stricken on several grounds. In the first place, they argue that it is special legislation in violation of Article 3, Section 34 and in particular sub-sections 4 and 9 of the South Carolina Constitution, which prohibit special legislation to incorporate school districts or otherwise where a general law can be made applicable. Their brief on this point is exhaustive and cites numerous cases dealing with special legislation consolidating school districts. After a careful consideration of all of the authorities cited, I am satisfied that the law of this State is clear that legislation which incorporates existing school districts into a single school district does not violate Article 3, Section 34.

The legislation here incorporates the eight existing school districts of Charleston County by consolidation into a single school district. It has been long established that the creation of a school district by the consolidation of existing school districts is not prohibited by Article III, Section 34, sub-section 4 or 9 of the South Carolina Constitution.

The leading case is the 1923 decision in the case of *Walker v. Bennett, supra,* 125 S. C. 389, 118 S. E. 779. In that case the Court considered the constitutionality of legislation enacted by the General Assembly in 1923 consolidating five school districts in Greenville County. As a result of this consolidation, a new school district was created. The Court held that this legislation did not violate Article III, Section 34, sub-section 4, stating that consolidation is not an incorporation, even though the necessary result of a consolidation is the incorporation of the new school district as consolidated.

Likewise, the Court did not consider the legislation to violate the prohibition against special legislation in cases where a general law can be made applicable, even though

there was in existence a general law covering the matter of consolidation. The opinion states in part: "So here, Section 1738 is the general law covering the matter of consolidation, and the act of 1923, although a separate act applying to this particular school district, may, in the matter of their consolidation, be deemed an amendment to Section 1738."

Thereafter, in 1924 in the case of *Arnette v. Ford*, 129 S. C. 526, 125 S. E. 138, the legislation under attack created the territory of five existing school districts into a centralized high school district, leaving the existing school districts intact (somewhat similar to the legislation here which continues the existing school districts as constituent school districts after consolidation.)

The Court there held that the legislation did not violate Article III, Section 34, subsection 4 for three separate reasons (a) because the Constitution does not refer to high school districts, (b) the legislation actually consolidates rather than incorporates, and (c) there was a general law providing for the creation of high school districts and the legislation here was merely an amendment to the general law. See also *Powell v. Hargrove*, 136 S. C. 345, 134 S. E. 380; *Walpole v. Wall*, 153 S. C. 106, 149 S. E. 760; *Tindall v. Byars, supra*, 217 S. C. 1, 59 S. E. (2d) 337; *Boatwright v. McElmurray, supra*, 247 S. C. 199, 146 S. E. (2d) 716.

In the case of *Moseley v. Welch, supra*, 209 S. C. 19, 39 S. E. (2d) 133, the Court had under consideration the question of whether or not special legislation relating to the administration of schools in Williamsburg County violated the prohibition of special legislation where a general law can be made applicable. In sustaining the legislation the Supreme Court cited with approval the earlier *Walker v. Bennett* decision to the effect that the act did not contravene the said section of the Constitution inasmuch as it was valid as a special provision in a general law and could be regarded as an amendment to the general law.

These decisions apply in the instant case and the legislation here is valid as a special provision in a general law and as an amendment to the general law. There is the further fact that the general law provides in Section 21-112(1) and Section 21-114 that all of the school districts of the County may be consolidated into a single school district embracing the entire county by an act of the General Assembly. Thus, the general law itself provides for the enactment of the legislation by which the consolidated school district was created; and the legislation is valid as a special provision in a general law which is expressly authorized by the general law. *Walker v. Bennett, supra; Arnette v. Ford, supra.*

Finally, the defendant taxpayers argue that the Act is invalid because the title thereto relates to more than one subject or that one or more subjects to which the Act relates are not expressed in the title. On this point the defendant taxpayers argue that the title refers to the creation of the consolidated school district, but is defective because it does not also refer to the creation of the constituent districts which are also provided for in the Act. Thus, they argue that the Act violates Article III, Section 17, of the South Carolina Constitution which provides that every act having force of law shall relate but to one subject, and that shall be expressed in its title. The decisions of the South Carolina Supreme Court hold that when the general subject of an act is stated in its title any details of legislation which provide the means, methods, or instrumentalities intended to facilitate accomplishment of its general purpose and which are germane to the act may be embraced in the body thereof without violating Article III, Section 17 and further that the title does not have to be an index of the contents of an act. *State ex rel. Farr v. Moorer,* 152 S. C. 455, 150 S. E. 269; *Ward v. Cobb,* 204 S. C. 275, 28 S. E. (2d) 850. The provisions of the Act here providing for the constituent districts come within the rule set forth above. Furthermore, these provisions are in the nature of special

provisions to a general law and cannot be objected to for that reason.

It is therefore ordered:

1. That the provisions of Section 11 of Act No. 340 of the Acts of the General Assembly of South Carolina for the year 1967 be, and the same hereby are, stricken.

2. That the outstanding bonded debt of the existing school districts of Charleston County shall be assumed on July 1, 1968 by the Charleston County School District, and thereafter debt service requirements shall be met by an annual district-wide (County wide) *ad valorem* tax levy sufficient to meet the payments of principal and interest when due.

3. That in calculating the amount of General Obligation bonds which the Charleston County School District may issue after July 1, 1968 under the 8% constitutional debt limit there shall be deducted the aggregate then outstanding bonded indebtedness incurred by the existing school districts prior to July 1, 1968.

4. That Act No. 340 of the Acts of the General Assembly of the State of South Carolina for the year 1967 be, and same hereby is, declared to be valid in all respects after the provisions of Section 11 thereof have been stricken.